UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BRANDON SCOTT JUDGE,

    Plaintiff,

v.                                          Case No. 23-cv-442-bhl

JOHN NICKEL,

    Defendant.

---

## DECISION AND ORDER

---

Plaintiff Brandon Scott Judge, who is representing himself, is proceeding on an Eighth Amendment claim against Defendant John Nickel. Judge alleges Nickel was deliberately indifferent towards Judge's serious medical needs as evidenced by a 40-minute delay in getting medical care after Judge intentionally attempted to overdose on one of his medications. Dkt. Nos. 9, 16 & 18. Nickel has moved for summary judgment. Dkt. No. 31. Because the Court agrees that the record does not include any evidence that Judge suffered a recoverable injury, Nickel's motion for summary judgment will be granted and the case dismissed.

## UNDISPUTED FACTS

At the relevant time, Judge was an inmate at the Waupun Correctional Institution, where Nickel was a correctional officer. Dkt. No. 33, ¶¶1-2. On January 1, 2023, Judge felt suicidal and consumed 25 pills of Quetiapine 200mg. Dkt. No. 1 at 3. According to Judge, Quetiapine is a "strong sedative" that causes difficulty staying awake. Dkt. No. 38. After swallowing the pills, Judge pressed the emergency call button 26 times over a 23-minute period as he tried to get medical assistance, but no one answered. *Id*. During this time, Judge had to "fight to stay awake." *Id*. Judge alleges that Nickel was the individual responsible for manning the control station at the time.

Dkt. No. 1 at 3. Judge eventually got the attention of a different correctional officer, who contacted the Health Services Unit (HSU). *Id.*

At around 10:10 p.m., about 40 minutes after he consumed the pills, Nurse Gwendolyn Vick (not a defendant) examined Judge for his overdose attempt. Dkt. No. 33, ¶3. Nurse Vick noted that Judge could move down the stairs without difficulty, his breathing was unlabored, and he appeared alert. *Id.*, ¶4. She also took his vitals and determined that he did not require additional intervention at the time. *Id.*; *see also* Dkt. No. 34-1 at 1-2. She did not leave the matter there, but ordered that Judge's vitals be checked again in 15 minutes. Dkt. No. 33, ¶5. In response to Nurse Vick's order, correctional staff moved Judge to a holding cell to allow nursing staff to assess him more frequently. *Id.* At 10:30 p.m. Nurse Vick checked Judge's vitals again, and concluded again that he did not require additional intervention. *Id.*, ¶6; *see also* Dkt. No. 34-1 at 9-10. She again ordered follow-up, and another recheck to monitor Judge's condition. *Id.* Thirty minutes later, at 11:00 p.m. Nurse Vick checked Judge's vitals again and noted a drop in his blood pressure, sufficient to require evaluation and treatment from the local emergency room. Dkt. No. 33, ¶7; *see also* Dkt. No. 34-1 at 9. Judge was immediately taken to Community Memorial Hospital, where he was admitted to the intensive care unit until January 3, 2023. Dkt. No. 33, ¶¶8-9.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see *also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); Celotex *Corp. v. Catrett*, 477 U.S. 317, 324 (1986); Ames *v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The party asserting that a fact is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## ANALYSIS

Defendant asserts that he is entitled to summary judgment because Seventh Circuit law is clear that an Eighth Amendment claim for delay of medical care requires "verifiable medical evidence" showing that the alleged delay caused additional injury or harm, apart from the underlying condition. Dkt. Nos. 32 & 39. Judge disagrees, arguing that "an injury doesn't make an Eighth Amendment violation." Dkt. No. 40. Judge also argues that Defendant "should be held accountable" for failing to do one of his job duties, *i.e.*, manning the control center, with an appropriate amount of diligence. Dkt. No. 38.

A §1983 claim is a "tort damage action," *see Lossman v. Pekarske*, 707 F.2d 288, 290 (7th Cir. 1983), and "[t]here is no tort…without an injury…," *see Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013). Judge is correct that a plaintiff need not prove a *physical* injury to recover on an Eighth Amendment violation. *See Rowe v. Shake,* 196 F.3d 778, 781–82 (7th Cir. 1999). It is also true that an inmate can prevail under the Eighth Amendment based on mental or emotional distress. *See Calhoun v. DeTella,* 319 F.3d 936, 941 (7th Cir. 2003). But the Seventh Circuit has confirmed that, in the context of a claim for delayed medical care, "some injury" is in fact required. *Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020) (noting that a delay in providing medical care for a suicide attempt serves as a basis for an Eighth Amendment claim provided it "result[ed] in

3

some injury."). In this setting, a prisoner cannot succeed on an Eighth Amendment claim without showing some injury that is separate from the injury caused by the underlying condition. *See Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) ("An inmate who complains that delay in medical treatment rose to a constitutional violation must place *verifying medical evidence* in the record to establish the detrimental effect of delay in medical treatment to succeed."); *see Miranda v. Cnty. of Lake,* 900 F.3d 335, 347 (7th Cir. 2018) (applying the requirement of verifying medical evidence to a delay in medical care for suicide attempts). In other words, a mere delay in obtaining care for a prisoner does not rise to the level of a constitutional violation if the delay was not material because it did not result in any harm to the plaintiff. *See id*. Prisoner plaintiffs asserting such claims must come forward with some evidence that the delay caused some degree of additional harm. *Jackson*, 733 F.3d at 790. "[N]on-expert evidence is sufficient as long as it permits the fact-finder to determine whether the delay caused additional harm." *Jackson v. Sheriff of Winnebago Cnty., Illinois*, 74 F.4th 496, 500–01 (7th Cir. 2023) (quoting *Ortiz v. City of Chicago*, 656 F.3d 523, 535 (7th Cir. 2011)).

Judge has failed to support his claim with evidence sufficient to survive Defendant's motion for summary judgment. Given the summary judgment record, there is no evidence from which a reasonable jury could find that Defendant's alleged failure to take action in the 23 minutes immediately after Judge swallowed the pills (between 9:30 p.m. and 9:53 p.m.) caused Judge any additional injury or harm. Indeed, at the time of Judge's initial vitals check, which took place about 40 minutes after the incident, he was undisputedly found not to need any immediate treatment. The same was true at his second vitals check, which took about 60 minutes after the incident. It was not until 90 minutes after he consumed the pills that medical staff concluded that Judge's vitals showed distress requiring outside treatment from the hospital and prison staff immediately arranged for that treatment. Given these undisputed facts, even if Defendant had responded sooner, Judge's medical condition would not have necessitated treatment. In other

4

words, nothing different would have happened, if Defendant had arrived at Judge's cell at 9:30 p.m., as Judge had wanted. Nor is there any medical evidence suggesting that Judge would have had a more favorable outcome at the hospital had he been brought in sooner. Based on this record, no reasonable jury could conclude that Judge suffered any additional physical injury due to Defendant's alleged inaction for 23 minutes.

Judge states that he had to "fight to stay awake" for 40 minutes, perhaps fearing for his life or experiencing anxiety or emotional distress during that time. Judge does not elaborate on what mental or emotional distress he experienced during that time. And he does not explain how any such mental or emotional distress was increased as a result of Defendant's alleged delay. He also fails to explain how any distress he experienced was separate from that he was experiencing as a result of his underlying medical condition, which resulted from his own decision to swallow 25 sedatives, as opposed to Defendant's inaction for a relatively short amount of time. And, again, even if Defendant had responded in the time frame that Judge demands, the record shows Judge's vitals would not have required medical intervention any earlier than was ultimately provided. On this record, Judge would have been under mental distress for the same period of time.

Finally, and in any event, because Defendant's alleged inaction did not cause any additional *physical* injury, Judge cannot seek compensatory damages for any mental or emotional injury. *See* 42 USC 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."); *see Minneci v. Pollard*, 565 U.S. 118, 129 (2012) ("Prisoners bringing federal lawsuits, for example, ordinarily may not seek damages for mental or emotional injury unconnected with physical injury."). While nominal or punitive damages may be available to Judge (in theory), the record does not support such an award, and there are no disputes of fact regarding damages for a jury to consider. *See Smith v. Wade*, 461 U.S. 30, 56 (1983) (noting that punitive damages requires proof that the defendant was "motivated

5

by evil motive or intent" or "reckless or callous indifference to a plaintiff's constitutional rights.); *see also Lord*, 952 F.3d at 905 (granting Defendants' motion for summary judgment because "[p]ut most simply, the summary judgment record revealed and left nothing for [Plaintiff] to present to a jury at trial.")

Judge alleges no facts, either in his verified complaints or summary judgment response materials, showing that Defendant actually knew about his suicide attempt and said or did anything with deliberate indifference, let alone evil motive or intent. Judge's assertion that Defendant should be held accountable for his failure to man the control center with more diligence is at best a claim for negligence, not a constitutional violation. *Gayton v. McCoy*, 593 F.3d 610 (7th Cir. 2010). Defendant is therefore entitled to summary judgment and the Court will dismiss this case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's motion for summary judgment (Dkt. No. 31) is **GRANTED** and this case is **DISMISSED.** The Clerk's office shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin on May 20, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this Court's decision to the Court of Appeals for the Seventh Circuit by filing in this Court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This Court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this Court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. §1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serious physical injury. *Id.*

Under certain circumstances, a party may ask this Court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The Court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.